EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de Ética Gubernamental<br><br>Recurrida<br><br>v.<br><br>Jorge A. Santini Padilla<br><br>Peticionario | Certiorari<br><br>2022 TSPR 53<br><br>209 DPR ____ |

Número del Caso: CC-2022-261

Fecha: 29 de abril de 2022

Tribunal de Apelaciones:

Panel VIII

Abogados de la parte peticionaria:

Lcdo. Carlos J. Andreu Collazo
Lcdo. Javier F. Micheo Marcial

Materia: Resolución del Tribunal con Voto Particular Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oficina de Ética Gubernamental<br><br>Recurrida<br><br>v.<br><br>Jorge A. Santini Padilla<br><br>Peticionario | CC-2022-261 | *Certiorari* |

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 29 de abril de 2022.

Examinada la *Moción en solicitud de orden de paralización en auxilio de jurisdicción* y el *Recurso de Certiorari*, presentados por el Lcdo. Jorge A. Santini Padilla el 25 de abril de 2022, se provee **no ha lugar** a ambos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García hubieran provisto ha lugar a ambos. El Juez Asociado señor Rivera García emitió un voto particular disidente al cual se unió la Jueza Asociada señora Pabón Charneco.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oficina de Ética Gubernamental<br>Recurrida<br><br>v.<br><br>Jorge A. Santini Padilla<br>Peticionario | CC-2022-261 | *Certiorari* |

**Voto particular Disidente emitido por el Juez Asociado señor Rivera García al cual se une la Jueza Asociada señora Pabón Charneco.**

En San Juan, Puerto Rico, a 29 de abril de 2022.

Por los fundamentos que expongo a continuación, disiento enérgicamente del proceder mayoritario de este Tribunal, que declaró *no ha lugar* la *Moción en solicitud de orden de paralización en auxilio de jurisdicción* y a la expedición del *Recurso de Certiorari* presentadas por el Lcdo. Jorge A. Santini Padilla. De entrada, puntualizó que es deber de este Tribunal velar que las actuaciones de las agencias administrativas se deriven de un ejercicio apropiado de la jurisdicción delegada.

La mayoría declinó atender este asunto, a pesar de nuestro llamado a hacer lo propio con premura. A tal efecto, desde mi óptica, utilizando como norte el acceso a la justicia y la economía procesal, no tengo dudas de que la denegatoria acordada desembocará en una

redundancia sobre la administración de la justicia. Peor aún, conllevará un perjuicio para el peticionario al ser sometido a un proceso contrario a derecho. Consecuentemente, la determinación mayoritaria le brinda a la OEG la autoridad para ejecutar actos que, a consecuencia de su inacción, podrían ser nulos si en su día se concluyera que esta carece de jurisdicción.

Mediante el curso de acción tomado hoy, se le da la espalda a nuestra facultad de revisión judicial. Es lamentable que una controversia basada en un asunto tan apremiante como la jurisdicción, principio altamente reiterado, en esta ocasión, se le haga caso omiso. Sin duda, la decisión conformada por la mayoría del Tribunal tiene el efecto de derrotar la economía procesal y permitir que la OEG efectúe un proceso adjudicativo ante una clara falta de jurisdicción. De este modo, no queda duda que dicha actuación es decididamente contraria a la obligación que, *motu proprio* este foro se ha impuesto, de auscultar su jurisdicción y la de los foros recurridos.

## I

Durante el mes de julio de 2017, el Lcdo. Jorge A. Santini Padilla (licenciado Santini Padilla) otorgó un contrato de servicios profesionales con el Senado de Puerto Rico (Senado) como asesor legislativo. Esto, en calidad de contratista independiente. Posteriormente, el 22 de septiembre de 2017, el peticionario fue activado al

servicio militar estatal a consecuencia del paso del Huracán María sobre Puerto Rico en virtud de la Orden Ejecutiva 2017-047. El peticionario, como coronel y voluntario de la **Guardia Estatal**, prestó servicios como asesor legal hasta el 15 de mayo de 2018. Consecuentemente, la Guardia Estatal le entregó una declaración informativa bajo el formulario 480.6B, emitido por el Departamento de Hacienda.

Posteriormente, el 27 de agosto de 2018, el Senado le envió una misiva a la OEG mediante la cual peticionó una recomendación sobre si procedía o no imponerle una acción correctiva al licenciado Santini Padilla respecto a la prestación de servicios profesionales tanto en el Senado como en la Guardia Estatal.[1] Adujo el Senado, que el peticionario fue autorizado a brindarle servicios de asesoría a ese cuerpo por un total de sesenta (60) horas al mes.[2] Previo a recibir el insumo de la OEG, el Senado se abstuvo de realizar el desembolso del pago de las facturas correspondientes a los meses de mayo y junio de 2018. Luego, no le fue renovado el contrato al licenciado Santini Padilla.

A tal efecto, el **10 de septiembre de 2018**, la Lcda. Zulma R. Rosario Vega, directora de la OEG, (licenciada Rosario Vega) contestó la misiva del Senado.[3] En

---

[1] Apéndice del *Certiorari*, Anejo 1, págs. 42-43.
[2] Surge de la documentación provista a la OEG que el señor Santini Padilla tenía un contrato de servicios profesionales con el Senado vigente desde el 1 de agosto de 2017 hasta el 30 de junio de 2018.
[3] Apéndice del *Certiorari*, Anejo 2, págs. 44-45.

definitiva, **la OEG concluyó que el peticionario no es un servidor público de la Rama Ejecutiva** sujeto a las disposiciones de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, supra,* por lo cual esta no tiene jurisdicción sobre éste.[4] De tal manera, expuso que el peticionario **no estaba impedido** de prestar servicios a la Guardia Estatal y al Senado **simultáneamente**.[5] A esos fines, la licenciada Rosario Vega expresó que para poder determinar el alcance del término "servidor público" era pertinente dilucidar si los servicios a prestarse tuvieron el efecto de crear una **relación contractual**, o si, por el contrario, constituyeron un **puesto**.[6]

En suma, la directora de la OEG concluyó que, de la información provista ante su consideración, se desprende que los servicios prestados por el licenciado Santini Padilla como Asesor Legal de la Guardia Estatal "tienen características de una relación contractual y no constituyen un puesto".[7] De ese mismo modo, explicó que el peticionario tenía flexibilidad para prestar sus servicios de manera presencial, de forma remota o correo electrónico, de ser necesario. Por lo tanto, este no tenía un horario fijo. Además, enfatizó que este no era acreedor de los beneficios de licencias por vacaciones y enfermedad, a diferencia de los servidores públicos que ocupan puestos. Más aún, señaló el hecho distintivo de

---

[4] Íd.
[5] Íd.
[6] Apéndice del *Certiorari*, Anejo 2, pág. 45.
[7] Íd.

que el Departamento de Hacienda le hacía al señor Santini Padilla la retención del siete por ciento (7%) aplicable a un contratista independiente, para todos los efectos contributivos.

Coetáneamente, el **8 de agosto de 2018**, el Senado igualmente le refirió una carta a la División Legal de la Guardia Nacional de Puerto Rico, la cual fue contestada el **20 de agosto de 2018**.[8] En virtud de esta, el Senado le formuló las siguientes interrogantes: "si existe prohibición alguna para que un oficial en Servicio Militar Activo Estatal pueda ofrecer servicios al Senado de Puerto Rico. De no existir prohibición, ¿Cuáles serían los parámetros o restricciones para poder rendir tales servicios?"[9] En síntesis, la consulta versó sobre "si un Oficial en el Servicio Militar Activo puede ofrecerle servicios al Senado de Puerto Rico durante el periodo de tiempo que firma el registro de asistencia provisto durante la activación".[10]

Así las cosas, la Guardia Nacional expresó que desconocía los términos del contrato otorgado entre el Senado y el peticionario. Ahora bien, en torno a la clasificación de las prestaciones realizadas por el licenciado Santini Padilla, esta hizo énfasis en la distinción de pertenecer a la Guardia Nacional *vis a vis* la **Guardia Estatal de Puerto Rico**. En ese sentido,

---

[8] Apéndice del *Certiorari*, *Anejo 3*, págs. 46-51.
[9] Íd.
[10] Íd., pág. 46.

determinó que la diferencia entre ambos cuerpos estriba en que la primera está adscrita a las Fuerzas Armadas de los Estados Unidos, mientras que la segunda —a la cual pertenece el señor Santini Padilla— es un organismo netamente estatal sin vínculo alguno con el ente federal.[11]

Además, la División Legal de la Guardia Nacional indicó que un soldado en el Servicio Militar Activo Estatal tendrá el carácter de funcionario público **solo cuando este se dedique a tiempo completo.**[12] No obstante, especificó que este puede llevar a cabo funciones privadas fuera de horas laborables siempre y cuando se mantenga dentro de los parámetros que establece la OEG.[13] Asimismo, expresó que no posee la información necesaria para determinar si una persona en el Servicio Activo Estatal prestó servicios en horas laborables al Senado.[14]

En cuanto a los efectos contributivos, señaló que el Departamento de Hacienda considera a los miembros de las Fuerzas Militares de Puerto Rico que **presten Servicio Militar Activo Estatal como un contratista independiente.** Por último, expresó que le hizo entrega al Senado de la asistencia del señor Santini Padilla certificada por un funcionario de la Guardia Estatal.[15]

---

[11] Íd., pág. 47.
[12] Íd., pág. 48.
[13] Íd., págs. 49-50.
[14] Íd.
[15] Íd.

No obstante, y en un giro en su postura, el 18 de diciembre de 2020, la OEG radicó una *Querella* contra el licenciado Santini Padilla.[16] En síntesis, adujo que el peticionario violentó el Artículo 4.2 (r) de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, supra*. En esta, se arguyó que, de las facturas presentadas por el peticionario ante el Senado, surge que la facturación por la asesoría en sesiones legislativas y ordinarias coincide con las fechas y horarios en que este aparece trabajando en la Guardia Estatal.[17] Además, que el licenciado Santini Padilla realizó treinta y un (31) horas no relacionadas a sus funciones, equivalente en servicios a $832.74. Así, concluyó que con su conducta este violó el Artículo 4.2 (r) y (s) de la Ley 1-2012, *supra*.[18]

En desacuerdo, el 18 de diciembre de 2020, el peticionario presentó una *Moción de Desestimación* mediante la cual arguyó que la OEG carecía de **jurisdicción sobre la materia**.[19] Luego de varias incidencias procesales, el 16 de noviembre de 2021, el foro administrativo emitió una *Orden*[20] en la que concluyó que la misiva emitida por la licenciada Rosario Vega no fue producto del proceso de una adjudicación administrativa formal. Asimismo, catalogó esta

---

[16] Apéndice del *Certiorari*, *Querella*, págs. 27-32.
[17] Íd., pág. 29.
[18] 3 LPRA sec. 1857a.
[19] Apéndice del *Certiorari*, *Moción de Desestimación*, págs. 33-41.
[20] Apéndice del *Certiorari*, *Orden*, págs. 155-166.

comunicación, como un error administrativo. Añadió, que la opinión no debe ser considerada como una interpretación oficial de la OEG. Por último, determinó que el señor Santini Padilla se convirtió en un servidor público de la Rama Ejecutiva, por lo cual la OEG tiene jurisdicción sobre este asunto.

Tras varias incidencias procesales, el 9 de febrero de 2022, el peticionario compareció ante el Tribunal de Apelaciones mediante recurso de revisión. Por su parte, el 23 de febrero de 2022, la OEG presentó una *Solicitud de Desestimación del Recurso de Revisión Judicial por Falta de Jurisdicción por Prematuro*.[21] Examinada la *Oposición* presentada por el licenciado Santini Padilla,[22] el 4 de marzo de 2022, el Tribunal de Apelaciones emitió una *Sentencia*.[23] En virtud de esta, desestimó el recurso de revisión por falta de jurisdicción ante su presentación prematura.[24] En esencia, resolvió que "la querella de epígrafe se encuentra en su etapa inicial toda vez que la determinación administrativa recurrida no le puso fin al proceso adjudicativo".[25] Ante ello,

---

[21] Apéndice del *Certiorari*, *Solicitud de Desestimación del Recurso de Revisión Judicial por Falta de Jurisdicción por Prematuro*, págs. 180-200.

[22] Apéndice del *Certiorari*, *Moción en Oposición a Solicitud de Desestimación del Recurso de Revisión Judicial por Falta de Jurisdicción por Prematuro*, págs. 202-210.

[23] Apéndice del *Certiorari*, *Sentencia* del 4 de marzo de 2022, págs. 212-218.

[24] Íd.

[25] Íd., pág. 217.

determinó que la *Orden* recurrida es de carácter interlocutorio, no estaba sujeta a revisión judicial.[26]

Posteriormente, el peticionario presento una *Moción de Reconsideración de Sentencia* y el foro intermedio por mayoría la declaró *no ha lugar*.[27] En expresión disidente, el Juez Salgado Schwarz expresó que reconsideraría su postura inicial "en aras de examinar si posiblemente se está cometiendo una injusticia o daño irreparable, a la luz de la normativa establecida en ORIL v. El Farmer, Inc., 204 DPR 229(2020)".[28]

Inconforme aún, el 25 de abril de 2022, el licenciado Santini Padilla compareció ante nos mediante una *Moción en solicitud de orden de paralización en auxilio de jurisdicción,* acompañada de un *Recurso de Certiorari.* Mediante este, nos solicita que revoquemos la *Sentencia* recurrida y que, a su vez, se desestime la *Querella* incoada por la OEG ante la ausencia de jurisdicción.[29]

A tal efecto, aduce que el **recurso versa sobre los siguientes asuntos jurisdiccionales**, a saber: (1) si la expresión administrativa emitida por la licenciada

---

[26] Íd.
[27] Apéndice del *Certiorari*, *Moción de Reconsideración de Sentencia*, págs. 219-225.
[28] Apéndice del *Certiorari*, *Resolución*, págs. 227-228.
[29] Mediante el recurso de *Certiorari*, expuso los siguientes señalamientos de errores:

> *El Honorable Tribunal de Apelaciones erró al desestimar por prematuro el Recurso de Revisión Judicial por falta de jurisdicción de la agencia radicado por el peticionario y, en su consecuencia, al no desestimar la Querella radicada por la OEG conforme al referido Recurso.*

Rosario Vega, ex directora de la OEG, antes de que esta última radicara la *Querella*, le permite desestimar la causa de acción por falta de jurisdicción; y (2) si el señor Santini Padilla, como miembro voluntario de la Guardia Estatal, y el cual prestó servicios como Asesor Legal, es considerado un servidor público de la Rama Ejecutiva sujeto a la Ley Orgánica de la OEG, *supra*.

## II

### A. Jurisdicción

Es norma reiterada que "[l]a jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias".[30] Consecuentemente, "la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia".[31] "En ese sentido, hemos sido enfáticos en que los tribunales deben ser celosos guardianes de su jurisdicción y que no poseen discreción para asumirla donde no la tienen".[32] Es por ello, que "los asuntos relacionados a la jurisdicción de un tribunal son privilegiados y deben atenderse con primacía".[33]

A tal efecto, la ausencia de falta de jurisdicción acarrea las siguientes consecuencias: "que no sea susceptible de ser subsanada; que las partes no puedan conferírsela voluntariamente a un tribunal como tampoco

---

[30] *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 385 (2020).
[31] Íd., pág. 386.
[32] Íd.
[33] Íd.

puede este arrogársela; la nulidad de los dictámenes emitidos;"[34] y entre otras, "la imposición a los tribunales del ineludible deber de auscultar su propia jurisdicción".[35] Así las cosas, hemos señalado que el planteamiento de falta de jurisdicción puede ser presentado en "cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*".[36]

**B. Moción en Auxilio de Jurisdicción**

Hemos reiterado, que "[u]na moción para solicitar a un tribunal un remedio en auxilio de su jurisdicción es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia".[37]

Al respecto, conviene recordar que un remedio en auxilio de su jurisdicción es **excepcional para casos o situaciones con el nivel de importancia adecuado.**[38] Cuando se soliciten medidas de paralización debemos considerar que: (1) **el peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos;** (2) **demuestre que sin la paralización sufrirá un daño irreparable;** (3) no se causará daño sustancial a las demás partes interesadas, y (4) la suspensión no perjudica el interés

---

[34] Íd

[35] Íd.

[36] Íd.

[37] *García López y otros v. E.L.A.*, 185 DPR 371, 377 (2012).

[38] Íd.

público.[39] Es por ello por lo que le corresponde a la parte promovente demostrar preliminarmente que la no expedición de la orden en auxilio de jurisdicción conllevaría un daño irreparable o sustancial. Por consiguiente, tiene el peso de la prueba de convencernos que la orden de paralización procede. PRT Telephone Co. V. Tribunal Superior, 103 DPR 200 (1975).

### C. Agotamiento de Remedios Administrativos

Es preciso señalar, que en la esfera del derecho administrativo hemos reconocido que la revisión judicial solo procede cuando el peticionario haya agotado todos los remedios ante la agencia adjudicadora.[40] Mediante la **doctrina de agotamiento de remedios administrativos,** los tribunales nos abstenemos de revisar una actuación de una agencia hasta en tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, <u>**de manera tal que la determinación administrativa refleje la posición final de la agencia**</u>.[41] Así las cosas, hemos reiterado que se activa la doctrina de agotamiento de remedios cuando:

> (1) **dar curso a la acción administrativa cause un daño inminente, material, sustancial** y no teórico o especulativo; (2) **el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrezca un remedio adecuado;** (3) **la agencia claramente no tenga jurisdicción sobre el asunto y la posposición**

---

[39] *Pantoja Oquendo v. Mun. de San Juan,* 182 DPR 101 (2011); *Plaza Las Américas v. N & H,* 166 DPR 631, 642-643 (2005).
[40] *AAA v. UIA,* 200 DPR 903, 915 (2018).
[41] *Colón Rivera v. ELA,* 189 DPR 1033 (2013).

**conllevaría un daño irreparable al afectado,** o (4) el asunto es estrictamente de derecho.[42]

En suma, la propia Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en su Sección 4.2 dispone que

> Una parte adversamente afectada por **una orden o resolución final** de una agencia y que **haya agotado todos los remedios provistos por la agencia** o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones.[43]

Así, la norma general en nuestra jurisdicción es que los tribunales podremos ejercer nuestra facultad revisora sobre las determinaciones de las agencias administrativas cuando (1) se trate de un orden o resolución final y (2) que se hayan agotado todos los remedios provistos por el ente administrativo. Ahora bien, el propio estatuto rector reconoce **ciertas excepciones** a este precepto. Así, esboza la Sección 4.3 de la misma ley que

> El tribunal podrá **relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos** provistos en el caso de que dicho remedio sea inadecuado, **o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios,** o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, **o cuando sea un caso claro de falta de jurisdicción de la agencia,** o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.[44]

---

[42] *ORIL v. El Farmer, Inc.*, 204 DPR 229 (2020)
[43] 3 LPRA sec. 9672.
[44] 3 LPRA sec. 9673.

De forma análoga, hemos reconocido también la doctrina de la finalidad en los casos administrativos.[45] El alcance de esta doctrina es similar al de la de agotamiento de remedios administrativos.[46] Consecuentemente, la doctrina de finalidad no opera en aquellas circunstancias en las cuales haya una **clara falta de jurisdicción de la agencia administrativa**.[47] En ese sentido, hemos concluido que, la parte afectada estaría desprovista de un remedio "toda vez que esperar a la determinación final de la agencia administrativa constituiría una gestión inútil, inefectiva, que no ofrece un remedio adecuado".[48] Por tanto, le "provocaría un daño irreparable".[49]

## D. Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico

La *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, *supra*, dispone que, la OEG "fiscaliza la conducta de los servidores públicos y penaliza a todos aquellos que transgreden la normativa ética que integra los valores del servicio público".[50] Ante ello, esta oficina adquiere jurisdicción sobre la conducta de los servidores de la Rama Ejecutiva.[51] Por consiguiente, tiene

---

[45] *AAA v. UIA, supra*, pág. 914 (2018).
[46] Íd.
[47] Íd., pág. 915.
[48] *ORL v. El Farmer, Inc.*, 204 DPR 229, 246 (2020).
[49] Íd.
[50] Íd.
[51] 3 LPRA sec. 1857

la autoridad para sancionar a servidores públicos que actúen en contravención a la propia ley orgánica.[52]

A esos fines, se establece que para que se configure una infracción bajo la Ley Orgánica de la OEG es un requisito indispensable que la conducta objeto de la infracción haya sido ejecutada por un servidor público. Así las cosas, define a un **servidor público** como sigue,

> persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.[53]

Además, la Ley Orgánica le brinda la potestad a la OEG y a su director ejecutivo a emitir opiniones sobre sobre las disposiciones de las cuales tiene que salvaguardar su cumplimiento. Dicho esto, le permite entre otras, "**E. [e]mitir opiniones sobre las disposiciones de esta Ley**";[54] y "**F.** [e]mitir las órdenes que sean necesarias y convenientes para cumplir con sus funciones, responsabilidades y deberes bajo esta Ley".[55]

## III

En el presente caso, el peticionario acude ante nosotros mediante una *Moción en Solicitud de Orden de Paralización en Auxilio de Jurisdicción* y un *Recurso de*

---

[52] 3 LPRA sec. 1857a-1857e.
[53] 3 LPRA sec. 1854 (gg).
[54] 3 LPRA sec. 1855b.
[55] Íd.

*Certiorari*. En virtud de estos, le solicita a esta Curia que, determine si la OEG tiene jurisdicción sobre su persona para imputarle varias violaciones a la Ley Orgánica de esta. Una mayoría de este Tribunal decidió no atender los méritos del asunto. Por no estar de acuerdo, disiento enérgicamente.

De entrada, bajo mi criterio, aquí era forzoso paralizar los procedimientos ante la OEG. De los autos surgen contundentes elementos para determinar si la OEG tiene facultad para incoar una *Querella* en contra del licenciado Santini Padilla, por presuntamente ser catalogado como funcionario público de la Rama Ejecutiva. Evidentemente, la conclusión de una mayoría de este Tribunal resulta en una absurda ineficiencia en el trámite procesal. Además, se ignora el hecho de que, al realizar un balance de intereses, no se justifica agotar los remedios administrativos. Como arguye el peticionario, la controversia esbozada se resume a un análisis estrictamente de derecho.

Ciertamente, la mayoría obvia las excepciones a la doctrina de agotamiento de remedios. Así, hace caso omiso al daño irreparable al cual se enfrenta el peticionario de no atenderse el asunto jurisdiccional. En concreto, se expone a un proceso *cuasi*-penal viciado de una incertidumbre sobre la jurisdicción del ente promovedor. Esto, de por sí, lo convierte en acreedor de la expedición del recurso y de la paralización de los

procedimientos ante el foro administrativo. Esta mayoría, incomprensiblemente olvida lo establecido en ORIL v. El Farmer, Inc., *supra*, al sostener que como no nos encontramos ante una determinación final de la agencia, no procede la revisión judicial de una determinación interlocutoria. Asimismo, nos encontramos ante un escenario en el cual el peticionario tendrá que esperar a la determinación final de la OEG, de lo cual seguramente constituirá una gestión inútil para obtener un remedio adecuado. Sostengo, que el fomentar un análisis contradictorio por parte de la OEG acarrea un claro incumplimiento con su deber de interpretar las disposiciones de su ley orgánica y proveer un efecto ineludible de esta determinación.

Es irrelevante la etapa en la cual se encuentren los procedimientos en el foro administrativos cuando la controversia versa sobre un asunto jurisdiccional. Ante ello, no es necesario que culmine el procedimiento administrativo para proceder con la revisión judicial. El claro planteamiento de la falta de jurisdicción de la OEG amerita que el peticionario no tenga que agotar los remedios administrativos.

Por lo tanto, mi criterio, ciertamente ignorado por la mayoría de este Tribunal, es que de los hechos ante nuestra consideración se desprenden todos los elementos necesarios para dilucidar si el licenciado Santini Padilla es o no considerado un servidor público, sujeto a

la jurisdicción a la OEG. Con la errada decisión tomada por una mayoría, hoy se soslaya no solo el acceso a la justicia y la economía procesal, sino que constituye una decisión en contravención a lo reiterado por este Tribunal sobre la primacía con la cual se deben atender las controversias de índole constitucional.

El proceder de la mayoría denota falta de consistencia con nuestros dictámenes. Evidentemente, el efecto de su actuación es validar el que un ciudadano sea sometido a un proceso de naturaleza *cuasi*-penal sin adjudicar con prontitud si el ente acusador tiene o no jurisdicción sobre la materia, y por ende, sobre el peticionario.

Edgardo Rivera García
Juez Asociado